UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EDWARD MCARTHUR ROYE,
      *Plaintiff,*

   v.

No. 1:24-cv-2296-MSN-WBP

FRANK BISIGNANO,
  Commissioner of Social Security,
        *Defendant.*

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's objections to the Magistrate Judge's findings of fact and recommendations. ECF 17. Plaintiff is correct that the Administrative Law Judge ("ALJ") failed to properly evaluate the supportability of Dr. Mazahery's medical opinion. For that reason, and for the reasons that follow below, the Court SUSTAINS Plaintiff's objections and REMANDS the case back to the ALJ for further proceedings.

## I.  BACKGROUND[1]

### A.  Factual Background

#### 1.  General Background

Plaintiff's alleged disability is prostate cancer in remission, posttraumatic stress disorder ("PTSD"), generalized anxiety disorder ("GAD"), and right arm and hand problems. AR 62, 67. The alleged onset date of Plaintiff's disability is June 13, 2022[2], at which time Plaintiff was fifty-four years old. AR 256-60.

---

[1] The Court adopts the factual and procedural history as detailed in Magistrate Judge Porter's report and recommendation. ECF 16 at 2-6.

[2] Plaintiff initially alleged the onset date was August 1, 2019, but amended the date prior to his hearing before the ALJ. AR 48, 256-260.

Plaintiff attended school through eleventh grade but later obtained his General Education Development ("GED"). AR 43. Although the record gives unclear dates, Plaintiff previously worked in maintenance at an airport from 2010 or 2013 to 2019, as a furniture deliveryman from 2018 to 2019, as a lube technician and service advisor at Wal-Mart from 2021 to 2022, and as lube technician at Elite Auto Parts in 2023. AR 43-44, 47, 326, 388.

### 2.    Medical Evaluations

The main thrust of Plaintiff's objections is that the ALJ improperly analyzed the medical opinion evidence. Plaintiff's medical history includes diagnoses of a closed fracture of the right forearm, lower urinary tract symptoms, degenerative disc disease, myelopathy, and myelomalacia. AR 615-16, 662-63, 678, 691. In this case, there are three relevant[3] medical opinions from Dr. Tomkins, Dr. Peters, and Dr. Mazahery. This section provides an overview of those three opinions.

### a)    Dr. Tomkins

Dr. Glen Tomkins is a general internal medicine doctor who examined Plaintiff on June 28, 2023. AR 631. Dr. Tompkins noted Plaintiff's health history included a motor vehicle accident in 1990 that resulted in the physical fixation of Plaintiff's right elbow, past prostate cancer that was treated with surgery, and current issues with frequent urination. *Id.* at 611-612. Upon examination, Dr. Tomkins found that Plaintiff's right elbow had limited range of motion in his ability to extend, flex, and rotate the arm. *Id.* at 615. Plaintiff's left elbow was normal. *Id.* Plaintiff's right shoulder was normal, but his left shoulder would create an electric shock of pain down his extremity when lifted. *Id.* Upon conducting a sensory exam, Dr. Tomkins found that light

---

[3] Plaintiff's medical history is more exhaustively described in the administrative record. This opinion focuses solely on Plaintiff's medical history that is relevant to the objections he raised to Magistrate Judge Porter's report and recommendation. *See Shinaberry v. Saul*, 952 F.3d 113, 124 n.5 (4th Cir. 2020) (holding that an issue not raised in district court is considered waived).

touch on Plaintiff's right forearm provoked a hypersensitive response, and sensation was impaired in some of Plaintiff's fingers. *Id.*

Dr. Tomkins found that Plaintiff had a closed fracture in his right forearm that had signs of degenerative changes and referred Plaintiff to an orthopedic surgeon for consideration of surgery and to an occupational or physical therapist for any further guidance. *Id.* at 615. Due to the right elbow and left shoulder pain, Dr. Tomkins found that the Plaintiff should not lift anything beyond 5 pounds with his left upper extremity until a neurosurgeon determined what caused his left upper extremity symptoms. *Id.* at 616. Regarding his frequent urination, Dr. Tomkins noted that Plaintiff must be allowed bathroom breaks every hour. *Id.*

Dr. Tomkins opined that Plaintiff is "seriously disabled at this point" because of his motor vehicle accident in 1990 and that he would be unable to use his right arm and hand. AR 616, 633. Dr. Tomkins further opined that Plaintiff would be unable to concentrate for more than an hour at a time before requiring a break because of a regular need to urinate and chronic neuropathic pain. AR 631.

<b>b)      Dr. Peters</b>

Dr. Jon Peters evaluated Plaintiff in July 2023. AR 685. Dr. Peters' examination found that Plaintiff's strength in all four extremities, sensory exam, and gait were all normal. *Id.* However, he also found that Plaintiff's cervical range of motion was limited, he experienced shooting pains when his head and neck were flexed, and that he presented with signs of cervical myelopathy. *Id.* at 685, 686. After a later review of an MRI of Plaintiff's spine, Dr. Peters noted severe multilevel cervical stenosis consistent with myelomalacia likely caused by chronic compressive myelopathy. AR 691. Dr. Peters found that his symptoms of numbness and tingling in the arms, weakness in the hand, neck pain, neck stiffness, and shooting pains were the result of the compressive

3

myelopathy. *Id.* at 691. He also found that Plaintiff's condition "would likely gradually progress" and could even result in paralysis. *Id.* Dr. Peters advised Plaintiff to consult with an orthopedic or neurological spinal surgeon. *Id.*

### c)  Dr. Mazahery

Dr. Behrang Mazahery, an orthopedic surgeon, began treating Plaintiff in September 2023. AR 701. On October 10, 2023, Dr. Mazahery performed an anterior cervical diskectomy and fusion ("ACDF") surgery on Plaintiff's spine to stabilize and prevent the progression of his neurologic deficit. AR 697, 738. Post operative MRIs showed that Plaintiff's spine had "some congenital central canal narrowing" as well as "mild thoracic spinal degenerative changes." *Id.* at 712. Dr. Mazahery opined that Plaintiff still had extensive myelomalacia and would likely have "residual neurological issues such as balance and dexterity." *Id.* at 697.  He found that Plaintiff was a disability candidate, that he would be unable to maintain attention and concentration before requiring break, that he had decreased hand function, dexterity, and manual labor, and that he had limited grip strength, coordination, and hand function. *Id.* at 697-702.

### B.  Procedural Background

#### 1.  Administrative Proceedings

Plaintiff applied for Disability Insurance Benefits ("DBI") and Supplemental Security Income ("SSI") on June 22, 2021. AR 256-60. After his claims were initially denied, Plaintiff requested a hearing before an ALJ. AR 110. The ALJ held a hearing on January 23, 2024. AR 38. Plaintiff and Lori Cowan, a vocation expert, both testified and answered questions from the ALJ and Plaintiff's representative. AR 56-60.

4

On March 26, 2024, the ALJ denied Plaintiff's claim, finding he was not disabled under the Social Security Act. AR 15-28. Plaintiff's request for the Appeals Council to review that decision was denied. AR 1-7, 243-44.

### 2.     The ALJ's Opinion

The ALJ concluded that claimant did not qualify as disabled under the Social Security Act. AR 19. Initially, the ALJ found that Plaintiff satisfied the first two steps of the analysis: he had not engaged in substantial gainful activity since June 13, 2022, and his degenerative disc disease, myelopathy, and status-post right upper extremity fracture were medically determinable impairments that significantly limited Plaintiff's ability to perform basic work activities. AR 20-21. However, the ALJ found that objective evidence regarding Plaintiff's physical condition rendered him ineligible for benefits.

First, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22. This was because Plaintiff ambulated with a normal gait with no use of any assistive device, had normal or only mildly reduced strength and range of motion, and the evidence did not show that Plaintiff was unable to complete work-related activities. AR 23-24.

Second, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain exertional limitations. AR 24. In coming to this conclusion, the ALJ considered Plaintiff's symptoms, and whether those symptoms were consistent with the objective evidence, medical opinions, and prior administrative medical findings. *Id.* The ALJ concluded that Plaintiff's subjective statements about the limiting effects of his symptoms were not consistent with the objective medical evidence. *Id.* at 24-25.

Regarding Plaintiff's subjective statements, Plaintiff testified that hand numbness caused him to stop driving, stop working, and made him struggle getting dressed. *Id.* at 24. Plaintiff further stated that he sits in the shower due to leg numbness, but that he can stand for 2-3 minutes and lift 5-8 pounds. *Id.* at 24.

Regarding the objective medical evidence, the ALJ found that Plaintiff's treatment records did not show "debilitating effects on the [Plaintiff's] functional abilities." *Id.* at 25. The ALJ noted, *inter alia*, that (1) the June 2023 right forearm x-ray showed no acute fracture or destructive skeletal lesion, (2) the results of the July 2023 MRI evidencing central canal narrowing and moderate to severe stenosis, (3) Dr. Peters' July 2023 evaluation showed limited cervical range of motion and shooting pains, but that strength and tendon reflexes were normal in all four extremities, sensory examination was normal, and he ambulated with a normal gait, and (4) the December 2023 MRI showed some canal narrowing and mild thoracic spinal degenerative changes.

Regarding the medical opinions in this case, the ALJ found all three medical opinions were unpersuasive because the conclusions they drew were inconsistent with the objective evidence regarding Plaintiff's symptoms. AR 26. Regarding Dr. Tomkins, the ALJ found that his conclusions that Plaintiff would be off task 25% of the workday, needs to urinate hourly, can never lift/carry, can sit for 8 hours, can stand/walk for 4 hours per day, and would miss 3 days per month of work due to his impairments, were at odds with Dr. Tomkin's observations that Plaintiff ambulated with a normal gait, without an assistive device, and generally had normal muscle strength in the upper and lower extremities. *Id.* Regarding Dr. Peters, the ALJ found that his August 2023 statement that Plaintiff should not return to work until he was evaluated by an orthopedic surgeon was not a functional assessment of Plaintiff's ability to perform basic work activities. *Id.*

Finally, the ALJ found that Dr. Mazahery's[4] December 2023 medical source opinion was unpersuasive. The ALJ found that the opinions that Plaintiff would be off task 25% of the work day, could pay attention for less than 5 minutes, could sit, stand, and walk for 8 hours, could handle, finger, push, and pull occasionally, could frequently perform postural movements, could occasionally rotate the head or neck, and could rarely balance, were "inconsistent with the objective evidence and unsupported by Dr. Peters' objective observations." *Id.* The ALJ did not specify to what objective evidence he was referring.

Based on these observations, the ALJ found Plaintiff had residual functional capacity, was not disabled as defined in the Social Security Act and was capable of performing work as a Service Advisor or Sales Route Delivery Driver. *Id.* at 26-28.

### 3.    Proceedings Before the Magistrate Judge

On December 17, 2024, Plaintiff appealed the denial of his social security claim by filing a complaint against the Acting Commissioner of Social Security. ECF 1. Plaintiff's complaint argued that the denial of his social security disability insurance benefits and supplemental security income benefits based on lack of disability was incorrect because Plaintiff is disabled. *Id.* at 2. Plaintiff requested that this Court find he is entitled to social security disability insurance and supplemental security income benefits under the Social Security Act or remand the case for further hearings. *Id.*

On May 13, 2025, Plaintiff moved for summary judgment. ECF 8. Plaintiff argued that the ALJ's RFC finding was flawed for three reasons: (1) the ALJ confused the medical opinion from Dr. Mazahery with that of Dr. Peters which resulted in errors in the ALJ's supportability analysis; (2) the ALJ erred in evaluating the opinion from Dr. Tomkins; and (3) the ALJ's rejection of all

---

[4] As explained *infra*, the parties agree that the ALJ appears to have mistakenly attributed Dr. Mazahery's opinion to Dr. Peters.

opinion evidence meant that the RFC determination was improperly based on the ALJ's lay assessment of medical evidence. ECF 8 at 1. On June 12, 2025, Defendant simultaneously responded to Plaintiff's motion and asserted its own motion for summary judgment, arguing that the ALJ's assessment was supported by substantial evidence. *See generally* ECF 11. Plaintiff filed a reply in support of his motion on June 26, 2025. *See generally* ECF 15.

The Magistrate Judge issued proposed findings of fact and recommendations on October 24, 2025. ECF 16. He found that the ALJ "carefully considered the record and applied the correct legal standard." *Id.* at 20. He further found: (1) that the ALJ's misidentification of Dr. Mazahery's opinion of that of Dr. Peters was "harmless error", (2) that the ALJ's analysis of Dr. Mazahery's opinion was sufficient, and (3) that the ALJ's RFC determination that Plaintiff could perform light work was supported by substantial evidence. *Id.* As such, the Magistrate Judge recommended granting Defendant's motion for summary judgment and denying Plaintiff's motion for summary judgment. *Id.*

### 4. Plaintiff's Objections to the Magistrate Judge's Report

On November 7, 2025, Plaintiff lodged two objections to the Magistrate Judge's report. ECF 17. First, Plaintiff objected to the finding that the ALJ properly evaluated the supportability factor of Dr. Mazahery's medical opinion. *Id.* at 1. Plaintiff argues that even if one accepts that the ALJ confused the names of Dr. Mazahery and Dr. Peters, the ALJ's analysis of Dr. Mazahery's opinion is too sparce to satisfy a supportability analysis because it lacks the requisite explanation and evidentiary support. ECF 17 at 1-5. He argues that the Magistrate Judge's findings as to the ALJ's analysis of Dr. Mazahery's opinion are an "improper post hoc rationalization." *Id.* at 2. Second, Plaintiff objects to the finding that the RFC was supported by substantial evidence. *Id.* at 5. Plaintiff argues that he has complex and "significant musculoskeletal impairments," therefore,

this Court should reject the Magistrate Judge's finding that the ALJ could render a commonsense judgment about Plaintiff's RFC. *Id.* at 5-6.

Defendant responded to Plaintiff's objections on November 17, 2025. ECF 18. Defendant provided no new argument, instead relying on arguments made in its motion for summary judgment as well as the Magistrate Judge's report. ECF 18 at 2.

## II.    LEGAL BACKGROUND

### A.    Applicable Law

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity because of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A qualifying "physical or mental impairment" is one that results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the Social Security Administration promulgated the detailed regulations currently in effect. These regulations establish a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found to be disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, meaning one that significantly limits the claimant's ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and (4) whether the

claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide whether the claimant can do other work in the national economy given his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The claimant bears the burden to prove disability for the first four steps of the analysis. *See McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The burden then shifts to the Commissioner at step five. *See id.*

The ALJ, in part, decides Plaintiff's claim under regulations designed to incorporate vocational factors when considering disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply when a medical condition prevents someone from returning to former employment but may not prevent other substantial, gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity ("RFC"), age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are often called "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion about whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

### B.    ALJ Review of Medical Opinions

An ALJ's decision must "build an accurate and logical bridge from the evidence to his conclusion" and should explain "which evidence the ALJ found credible and why." *Brown v.*

*Comm'r of Soc. Sec.*, 873 F.3d 251, 269 (4th Cir. 2017); *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The decision need not address every piece of evidence in the record. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). When analyzing medical opinions, an ALJ must consider five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Of these factors, "supportability" and "consistency" are most important, and the ALJ must explain how he considered both factors when he assessed each medical opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), (b)(2). Although similar, supportability and consistency are distinct factors:

> The supportability factor relates to the extent to which a medical source has articulated support for the medical source's own opinion. The consistency factor relates to the relationship between a medical source's opinion and other evidence within the record. Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence in the record. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

*Cody v. Comm'r of Soc. Sec. Admin.*, No. 9:20-CV-02620-JD-MHC, 2021 WL 6012228, at *4 (D.S.C. Oct. 27, 2021), *report and recommendation adopted sub nom. Belinda C. v. Comm'r of Soc. Sec.*, No. 9:20-CV-02620-JD-MHC, 2021 WL 6011067 (D.S.C. Dec. 17, 2021).

The ALJ need only articulate supportability and consistency at the "source-level," meaning the ALJ does not have to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually"; the opinions from a single medical source are considered "together using the factors." 20 C.F.R. § 404.1520c (a), (b)(1); *see also Angela U. v. Kijakazi*, No. 2:22-CV-34, 2022 WL 3207455, at *8 (E.D. Va. Jul. 19, 2022), *rep. and recommendation adopted,* No. 2:22CV34 (RCY), 2022 WL 3161896 (E.D. Va. Aug. 8, 2022) (holding that the ALJ was not required to consider doctors' opinions about the plaintiff's absenteeism individually).

## C. Standard of Review

11

Once a Magistrate Judge has issued a report and recommendation, the responsibility for making a final determination remains with the district court, which must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Under the Social Security Act, a district court must affirm the Commissioner's final decision "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). The term "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Easterbrook v. Kijakazi*, 88 F.4th 502, 511 (4th Cir. 2023) (citing *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) and quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotations and citations omitted).

In determining whether a decision is supported by substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id.* (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). It is the ALJ's duty—and not the reviewing court's—to resolve evidentiary conflicts, and the ALJ's decision must be affirmed if it is supported by substantial evidence. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496

12

F.3d 1253, 1260 (11th Cir. 2007) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Brown v. Comm'r of Soc. Sec.*, 873 F.3d 251, 267 (4th Cir. 2017) (citations omitted).

## III.    ANALYSIS

Plaintiff's objections focus on two perceived flaws of the ALJ's opinion. First, he argues that the Magistrate Judge made improper post hoc rationalizations in order to find that Dr. Mazahery's opinion included a supportability analysis. Second, Plaintiff argues that the ALJ's finding of RFC lacked substantial evidence because he rejected all the medical opinions in this case. Plaintiff is correct that the ALJ failed to perform a sufficient review of Dr. Mazahery's opinion. As such, this case must be remanded for further proceedings.

### A.    The ALJ's analysis of Dr. Mazahery's opinion is insufficient.

As a threshold matter, the parties agree that the ALJ misattributed the medical opinion of Dr. Mazahery to Dr. Peters. *See* ECF 9 at 14 (Plaintiff explaining, "ALJ confused [Dr. Mazahery's] opinion as coming from Dr. Peters."); ECF 11 at 11 (Defendant explaining, "[i]nitially, Plaintiff correctly notes that the ALJ misidentified Dr. Mazahery's opinion as that from Dr. Peters."). Such an error is evident because the December 2023 medical opinion in this case was authored by Dr. Mazahery. AR 697. Plaintiff does not argue that this scrivener's error itself is a basis for reversal, and the Court agrees with the Magistrate Judge that the misattribution error was harmless. ECF 16 at 15-16.

Instead, Plaintiff argues that the ALJ's review of Dr. Mazahery's medical opinion is insufficient because the ALJ failed to conduct a supportability analysis. The ALJ's analysis, correcting the misattribution error, is as follows:

> I find the December 2023 medical source opinion from Dr. [Mazahery] unpersuasive (Ex. 10F). He opined that the claimant would be off task 25% of the workday, can pay attention for less than 5 minutes, can sit for 8 hours, can stand and walk for 8 hours, can handle, finger, push, and pull occasionally, can frequently perform postural movements, can occasionally rotate the head or neck, and can rarely balance. This opinion is inconsistent with the objective evidence and is unsupported by Dr. Peters' objective observations. There are no examinations in the record to support off task limitations.

AR 26.[5]

The ALJ does not include any record citations to support the finding that Dr. Mazahery's opinion was inconsistent with objective evidence in this paragraph. Earlier in the opinion, the ALJ generically listed the "objective evidence" the ALJ considered. *Id.* at 25.

The ALJ's review of Dr. Mazahery's medical opinion does not include an adequate supportability analysis. Supportability focuses on whether the doctor's own objective medical evidence supports his opinion. *Tina B. v. Kijakazi*, No. 3:21-CV-000348 (REP), 2022 WL 2057739, at *8 (E.D. Va. May 6, 2022), *report and recommendation adopted sub nom. McGinnis v. Kijakazi*, No. 3:21CV348, 2022 WL 2053146 (E.D. Va. Jun. 7, 2022), *aff'd sub nom. Booker v. Kijakazi*, No. 22-1828, 2023 WL 3645062 (4th Cir. May 25, 2023) ("The ALJ could properly discredit [medical] opinions for lack of support if [the doctor's] own treatment notes do not support his findings."). Credibility focuses on the relationship between a medical opinion and other evidence. *Cody*, 2021 WL 6012228, at *3. ALJs must explain how *both* factors led to the ALJ's

---

[5] The ALJ incorrectly summarizes a portion of Dr. Mazahery's December 2023 opinion. The ALJ states that the opinion reflects that Plaintiff can "handle, finger, push, and pull occasionally," but the opinion itself states that Plaintiff can only handle and finger rarely. (AR 26, 703). This mistake does not appear to be because of the misattribution as there is no other medical opinion in the record that indicates Plaintiff can handle and finger occasionally.

decision. *Id.* The ALJ need not use any "particular language or adhere to a particular format" in issuing their decision. *Woodson v. Berryhill, 2018 WL 4659449*, at *6 (E.D. Va. Aug. 7, 2018), *report and recommendation adopted*, 2018 WL 4658681 (E.D. Va. Sept. 27, 2018). However, in this case the ALJ, far from using any magic words, fails to provide any substantive analysis.

The ALJ's analysis amounts to 1) stating Dr. Mazahery's conclusion, and 2) claiming it is contradicted by both objective evidence and Dr. Peters' objective observations. While an ALJ need not repeat themselves, a reviewing court cannot "fill in the blanks for the ALJ" or otherwise "bolster inconclusive findings." *Boyd v. Kijakazi*, No. 2:21CV29, 2022 WL 949904, at *2 (E.D. Va. Mar. 29, 2022). Here, the ALJ leaves lots of blanks. The ALJ fails to analyze what observations Dr. Mazahery made during his examination, specify what objective evidence contradicts those observations, or otherwise explain what evidence is contradictory to Dr. Mazahery's conclusions. As such, the ALJ fails to explain why Dr. Mazahery's conclusions are contradicted and therefore unpersuasive. *Compare Todd A. v. Kijakazi*, No. 3:20cv594, 2021 WL 5348668 (E.D. Va. Nov. 16, 2021) (delineating ALJ's analysis and concluding that "the ALJ properly addressed the supportability factor and thoroughly articulated why Dr. Sangha's own notes did not support his ultimate opinion") *with Boyd*, 2022 WL 949904, at *3 ("…[T]he problem here is that the ALJ did not actually analyze or even assert a bare conclusion as to whether the other record evidence was consistent with Dr. Bernens' opinion.") *and Mary R. v. Saul*, No. 3:19cv903, 2021 WL 388463, at *6 (E.D. Va. Jan. 19, 2021) (finding that an ALJ adequately addressed the supportability factor when they found that a medical provider's opinion "was less supported because [the provider] found extreme limitations even though he observed [the plaintiff] to be cooperative with good eye contact").

The ALJ simply fails to evaluate the relevant record evidence in the context of addressing Dr. Mazahery's medical opinion. The ALJ did not provide a "narrative discussion" to explain the ALJ's reasoning, leaving the Court to guess how Dr. Mazahery's opinion was analyzed by the ALJ. *Monroe v. Colvin*, 826 F.3d 176, 190 (4th Cir. 2016) (noting the ALJ's failure to include a narrative discussion describing how the evidence supports each conclusion precluded meaningful judicial review where the ALJ gave conclusory analysis of medical opinions and did not adequately explain his reasoning); *Julie J. v. O'Malley*, No. 5:23-CV-00007, 2024 WL 890001, at *13 (W.D. Va. Mar. 1, 2024) ("The ALJ did not explain how those two findings undermined [the medical] opinion … again leaving the Court to guess how she evaluated [the medical] opinion.") (cleaned up). The mere discussion of record evidence in other portions of the opinion without any tie specifically to an analysis of Dr. Mazahery's opinion does not assist the Court in tracing the path of the ALJ's reasoning. *Boyd*, 2022 WL 949904, at *3 ("…the ALJ here did not connect the record evidence she discussed elsewhere to Dr. Bernens' opinion. Without some such connection, the ALJ failed to build the required bridge between her discussion of the record evidence in other portions of her opinion and the question of whether Dr. Bernens' opinion was consistent with that evidence.").

As such, the ALJ failed to complete the required supportability analysis for Dr. Mazahery's opinion – a failure that frustrates judicial review of whether substantial evidence supports the ALJ's decision. *Boyd*, 2022 WL 949904, at *3. This flaw in the ALJ's analysis is "clearly error," constitutes a failure to apply the correct legal standard, and requires a remand for further consideration. *Cody*, 2021 WL 6012228, at *9; *Lori R., v. O'Malley*, No. 2:22-CV-508, 2024 WL 1283788, at *9 (E.D. Va. Mar. 26, 2024) (remanding due to a failure of the ALJ to do a consistency analysis); *Stephen R. v. O'Malley*, No. 21-2292, 2024 WL 3508155, at *4 (4th Cir. Jul. 23, 2024)

(remanding case where ALJ's analysis was "threadbare and lacked citations."). On remand, the ALJ should provide a narrative discussion that more thoroughly explains the ALJ's persuasiveness evaluation and explicitly addresses the supportability and consistency factors.

## IV.   CONCLUSION

The Court, having reviewed the record and examined the objections filed by the Plaintiff to the Report and Recommendation, ECF 17, and having made *de novo* findings with respect to the portions objected to, GRANTS-IN-PART the objections. It is therefore ORDERED that Plaintiff's Motion for Summary Judgment, ECF 8, is GRANTED, Defendant's Motion for Summary Judgment, ECF 12, is DENIED, the decision of the ALJ is VACATED, and this matter is REMANDED for further consideration consistent with this Order.

**IT IS SO ORDERED.**

/s/
_____
Michael S. Nachmanoff
United States District Judge

March 25, 2026
Alexandria, Virginia

17